UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX INC.,
d/b/a LIBERTY TAX SERVICE,

   Plaintiff,

v.              ACTION NO. 2:14-CV-543

ROBERT W. BERG,

   Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on Plaintiff's Motion for Default Judgment. Specifically, Plaintiff seeks judgment against Defendant for breach of a contract to operate franchised tax preparation locations in California. The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72 for recommended disposition. For the reasons set forth below, the undersigned RECOMMENDS that plaintiff's motion for default judgment be GRANTED, and that default judgment be entered against Defendant, Robert W. Berg.

### I. STATEMENT OF THE CASE

A review of the pleadings, declarations and attached exhibits in the case establishes the following facts.[1] On August

---

[1] The alleged facts are considered admitted due to the Defendant's Default. See Fed. R. Civ. P. 8(b)(6); see also Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

1

25, 2005 and April 27, 2011, Robert W. Berg ("Berg"), Defendant, and JTH Tax, Inc., doing business as Liberty Tax Service ("Liberty"), entered into two franchise agreements that resulted in Berg becoming the franchisee of three offices in San Diego, California. (ECF No. 1, at 2-3).

By signing these agreements, Berg, a citizen of California — with a last known residence at 8674 Perseus Road, San Diego, California 92126 — began a substantial and continuing relationship with Liberty, which is incorporated in Delaware and has its principal place of business in Virginia. Berg's relationship included travel to Virginia and regular contact with Liberty in Virginia Beach. (ECF No. 1, at 1).[2]

The California offices resulting from the franchise agreement were located at (1) 7061 Clairemont Mesa Boulevard, (2) 4310 Genesee Avenue, and (3) 1880 Grand Avenue. (ECF No. 1, at 2-3). Berg signed each agreement as a sole proprietor. (ECF No. 1-1, at 16; ECF No. 1-4, at 19). Berg agreed to pay monthly royalty payments of fourteen percent of gross receipts, with the minimum royalty payments set by the agreement, and advertising fees of five percent of gross receipts for each franchise office. (ECF No. 1-1, at 4-5).

---

[2] The Franchise Agreements also contain Berg's consent to jurisdiction and venue in this Court, and to application of Virginia law. (ECF No. 2-4, § 15 (a)-(b)).

2

Throughout his operation of the franchise, Berg fell behind on the royalty and fee payments and failed to maintain the required hours of operation. (ECF No. 1, at 3). By July 2014, Berg owed Liberty $267,391.35 in unpaid royalties and fees. (ECF No. 1, at 3). Therefore, on July 10, 2014, Liberty terminated its agreement with Berg and requested Berg's compliance with the post-termination provisions contained in the franchise agreements. (ECF No. 1-6; ECF No. 1-7).

Upon termination of the agreements, Berg was obliged to pay the amounts due to Liberty; deliver customer files and information, and return other proprietary information to Liberty; as well as comply with the covenant not to compete and the covenant not to solicit.(ECF No. 1-4, §§ 9-10).

The covenant not to compete stated:

> You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Bank Products, within the Territory or within twenty-five miles of the boundaries of the Territory granted by this Agreement.

(ECF No. 1, at 5); see also (ECF No. 1-3, § 10(b); ECF No. 1-4, § 10(b)). The covenant not to solicit stated:

> You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, you will not within the Territory or within 25 miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity *served*

> by any of your prior Liberty offices in the last 12 months that you were a Liberty franchisee, or such shorter time as you were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Bank Products.

(ECF No. 1, at 5); see also (ECF No. 1-3, § 10(d); ECF No. 1-4, § 10(d)).

On October 22, 2014, Liberty filed the present action alleging Berg's non-compliance with the post-termination duties. (ECF No. 1, at 5). In addition to failing to pay the amount owed to Liberty, the complaint alleged that Berg had not returned the proprietary information, that he violated the covenants not to compete and not to solicit, and that he was preparing taxes at an office under the name "Berg Taxes" located at 5252 Balboa Ave San Diego, California. (ECF No. 1, at 5-6). Liberty sought judgment for $267,391.35 and injunctive relief compelling Berg as well as his employees and agents to:

> (a) stop identifying their operations as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks that are likely to be confused with the Marks;
> (b) stop using all literature received from Liberty and other items bearing the Marks;
> (c) Deliver to Liberty all customer lists and information;
> (d) Deliver to Liberty all customer tax returns, files, records, and copies;
> (e) Deliver to Liberty the copy of the Operations Manual and any updates which Liberty loaned to the Defendant;
> (f) Transfer to Liberty all telephone numbers, listings, and advertisements used in the former

4

>   Liberty offices and deliver to Liberty copies of such documents of transfer;
>   (g) Never divulge or use for the benefit of anyone outside the Liberty system any information concerning customers served by the prior Liberty franchised business;
>   (h) Not directly or indirectly prepare or electronically file income tax returns or offer bank products within Liberty territories CA 689, and CA 691, or within 25 miles of the boundaries of these territories, for two years from the date of the entry of an order of this Court entering an injunction; and
>   (i) Not directly or indirectly solicit the patronage of any former Liberty customer served by the Defendant's prior Liberty offices during the time period of August 25, 2013 through July 10, 2014 for the purpose of offering tax preparation, electronic filing, or bank products, within former Liberty territories CA 689, and CA 691, or within 25 miles of the boundaries of these territories, for two years from the date of the entry of an order of this Court entering an injunction.

(ECF No. 1, at 7-8)

Liberty personally served Berg with the Complaint on October 29, 2014, with proof of service filed November 5, 2014. (ECF No. 4). Berg failed to file an Answer or timely respond to the Complaint. Thus, Liberty requested the Clerk enter his Default on December 8, 2014, and it was entered the same day pursuant to Federal Rule of Civil Procedure 55(a). (ECF Nos. 5, 6).

On December 15, 2014, Liberty filed a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 11). In support of the Motion, Liberty submitted a declaration verifying the amount due for unpaid royalties and

5

advertising fees. (Decl. of Heather Herrick, ECF No. 12-1). Liberty seeks payment of the amount past due and a permanent injunction requiring Berg to comply with with the covenants not to compete and not to solicit. (ECF No. 12, at 3).

## II. ANALYSIS

Default Judgment is appropriate where a defendant "has failed to plead or otherwise defend" against an action and that failure is demonstrated by an affidavit or other filing. Fed. R. Civ. P. 55(a); see also Chafin v. Chafin, 133 S. Ct. 1017, 1025 (2013) (noting "courts issue default judgments against defendants who failed to appear or participate in the proceedings and therefore seem less likely to comply"). Berg was personally served on October 29, 2014, making his Answer due within twenty-one days of service on November 19, 2014. Fed. R. Civ. P. 12(a)(1)(A). Having received no response, Liberty filed a Motion for Entry of Default, which the Clerk properly entered on December 8, 2014. Fed. R. Civ. P. 55(a).

Liberty's Complaint included a statement of the court's jurisdiction, a statement of the claim entitling it to relief, and a demand for relief. Fed. R. Civ. P. 8(a).[3] By failing to

---

[3] Pursuant to Virginia's long-arm statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from . . . [t]ransacting any business in this Commonwealth." Va. Code Ann. § 8.01-328.1. Pursuant to 28 U.S.C. § 1332, the court has subject matter jurisdiction based on diversity of citizenship

answer, Berg admitted the allegations of fact in Liberty's Complaint. Fed. R. Civ. P. 8(b)(6); see also Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). Thus, Berg's default establishes facts supporting a diversity of citizenship between the parties, the amount in controversy exceeding $75,000, and Berg's consent to suit in the Eastern District of Virginia. However, even when the grounds for default judgment exist, the court must still evaluate the sufficiency of the complaint. See, e.g., Joe Hand Promotions, Inc. v. Citibars, Inc., 2:11cv58, 2012 WL 503212, at *3 (E.D. Va. Feb. 8, 2012) (citing Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998)) ("[T]he Court must nevertheless determine whether Plaintiff's complaint states a claim upon which relief can be granted.").

## A. Accounts Receivable and Breach of Franchise Agreements

Liberty's complaint and the declaration of Heather Herrick establish that Berg and Liberty entered into two franchise agreements and Berg breached the terms of both agreements. In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; (3) and injury or damage to the plaintiff caused by the breach of

---

with an amount in controversy exceeding $75,000.00. Venue is proper under 28 U.S.C. § 1391 and Local Rule 3(C).

obligation." <u>Squire v. Va. Hous. Dev. Auth.</u>, 758 S.E.2d 55, 60 (Va. 2014)(quoting <u>Filak v. George</u>, 594 S.E.2d 610, 614 (Va. 2004)).

Here, there was a legally enforceable obligation of Berg to Liberty as evidenced by the signed franchise agreements. (ECF Nos. 3-4). By signing the franchise agreements, Berg evidenced his agreement to pay advertisement and royalty fees for each franchise store as well as adhere to specified conditions upon termination of the agreements. (ECF No. 1-1, at 4-5; ECF No. 1-4, §§ 9-10). The facts admitted by his default establish that Berg has breached his obligations under those agreements. He failed to pay the royalty and advertising fees, accumulating an outstanding balance of $267,391.35 by July of 2014. (ECF No. 1, at 3; Decl. of Heather Herrick, ECF No. 12-1, at 24-25). Berg also failed to abide by his obligations upon termination of those agreements by failing to pay the amounts due to Liberty; deliver customer files and information, and return other proprietary information to Liberty. (ECF No. 1, at 5-6).

Further, the admitted facts establish that Berg has failed to comply with the covenant not to compete and the covenant not to solicit. According to the Complaint, Berg is operating "Berg Taxes" at 5252 Balboa Avenue, Suite 501 in San Diego, CA. (ECF No. 1, at 5-6). The facts admitted by his default establish that Berg is preparing tax returns at this location. (ECF No. 1, at

8

5). By preparing tax returns at the Balboa Avenue location, Berg has violated both temporally and geographically the limitations in the covenants not to compete and not to solicit that prohibit tax services within the franchise territory or within twenty-five miles of the territory's border.[4] Berg has also violated the prohibition against providing tax services and the prohibition against soliciting former customers in preparing tax returns at "Berg Taxes." (ECF No. 1, §§ 22, 24, 25).

These breaches of the franchise agreements have caused Liberty to suffer damages and irreparable harm. (ECF No. 1, at 6-7). Therefore, Liberty has sufficiently shown Berg's breach of contract and accordingly the undersigned recommends the court grant Liberty's motion and enter judgment against the defendant as to Count I and II of the complaint.

---

[4] Though not specified in the Complaint, this Court may take judicial notice of the fact that 5252 Balboa Avenue is located within territory CA 691, which violates geographical limitations in the covenants against competition and solicitation. See Va. Innovation Sciences, Inc. v. Samsung Elecs. Co., 11 F. Supp. 3d 622, 628 (E.D. Va. 2014) (discussing the permissibility of taking judicial notice of travel distances in the Fourth Circuit District Courts); Fed R. Evid. 201(b)(2). The distance between 7061 Clairemont Mesa Boulevard and 5252 Balboa Ave is 2.6 miles and the distance between 4310 Genesee Avenue and 5252 Balboa Ave is 1.1 miles. See (ECF No. 1-3, at 21)(outlining territory CA 691 in a map displaying Balboa Ave); Google Maps, http://www.google.com/maps (last visited Jan. 26, 2015).

## B. Request for Relief

Because the admitted facts establish Berg's liability, this report turns to Liberty's request for relief that includes payment of amounts due and a permanent injunction. For the reasons stated above as to Berg's breach of the franchise agreements and the declaration of Heather Herrick, the undersigned recommends that judgment in the amount of $267,391.35 be entered in favor of Liberty.

As for the permanent injunction, Liberty essentially requests Berg's compliance with the covenants not to compete and not to solicit. (See ECF No. 1, at 7-8; ECF No. 1-3, §§ 9-10; ECF No. 1-4, §§ 9-10). Granting an injunction is appropriate when a plaintiff has

> demonstrate[d]: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010)(quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). The decision to grant a permanent injunction is an act of the District Court's equitable discretion. eBay Inc. v. MercExchange, L.L.C., 547 U.S. at 391.

Liberty argues irreparable injury and inadequate remedies at law from Berg's breaches. Specifically, Berg's breaches of the covenants not to compete and not to solicit threaten Liberty's customer base and relationship with all franchisees. (ECF No. 12, at 4-5). The Fourth Circuit previously held that "permanent loss of customers to a competitor or the loss of goodwill, [satisfies] the irreparable injury prong." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994), abrogated in part by Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21-22 (2008). Under Winter, a permanent loss sufficient to constitute irreparable injury must be "likely." 555 U.S. at 22.

As stated above, Berg is currently in breach of the covenants not to compete and not to solicit by operating "Berg Taxes" within the CA 691 territory of the franchise agreement. From these breaches, it is likely that Liberty faces irreparable injury since this Court has recognized that "[n]o amount of damages can quantify the potential loss to Liberty's goodwill and its reputation, and fail[ing] to enforce the non-compete [covenant] could send a dangerously damaging signal to other franchisees." JTH Tax, Inc. v. Geraci, No. 2:14CV236, 2014 WL 4955373, at *8 (E.D. Va. Oct. 2, 2014). Therefore, the first two prongs are satisfied, as Liberty will likely face irreparable

11

injury and inadequate remedies at law if an injunction were denied.

Liberty also argues an injunction is warranted given the balance of hardships between itself and Berg. Enjoining Berg is less of a burden than the hardship Liberty may face by denying the injunction. An injunction simply forces Berg "to comply with [his] previous contractual obligations." Id. Without an injunction, Berg would be able to continue in breach of the franchise agreements, which would likely lead to loss of customer base and additional litigation for Liberty. Therefore, weighing the hardships warrants the grant of an injunction.

Lastly, granting an injunction against Berg does not disserve the public interest. Under this prong, this Court has found that the sanctity of contract is a public interest. See id. Enforcing the franchise agreements between Berg and Liberty actually serves a public interest by maintaining this sanctity of contract. Therefore, the undersigned recommends GRANTING Liberty's request for a permanent injunction.

### III. RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Plaintiff's Motion for Default Judgment, (ECF No. 11), be GRANTED, and that default judgment be entered against Defendant Robert W. Berg as follows:

(1) that the court GRANT Liberty's Motion for Default

Judgment against Berg and enter judgment in the amount of $267,391.35 as the outstanding balance and amount due on the outstanding royalties and advertising fees.

(2) that the court GRANT Liberty's request for injunctive relief against Berg, enjoining Berg as well as his employees and agents to:

(a) stop identifying their operations as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks that are likely to be confused with the Marks;

(b) stop using all literature received from Liberty and other items bearing the Marks;

(c) Deliver to Liberty all customer lists and information;

(d) Deliver to Liberty all customer tax returns, files, records, and copies;

(e) Deliver to Liberty the copy of the Operations Manual and any updates which Liberty loaned to the Defendant;

(f) Transfer to Liberty all telephone numbers, listings, and advertisements used in the former Liberty offices and deliver to Liberty copies of such documents of transfer;

13

(g) Never divulge or use for the benefit of anyone outside the Liberty system any information concerning customers served by the prior Liberty franchised business;

(h) Not directly or indirectly prepare or electronically file income tax returns or offer bank products within Liberty territories CA 689, and CA 691, or within 25 miles of the boundaries of these territories, for two years from the date of July 10, 2014; and

(i) Not directly or indirectly solicit the patronage of any former Liberty customer served by the Defendant's prior Liberty offices during the time period of August 25, 2013 through July 10, 2014 for the purpose of offering tax preparation, electronic filing, or bank products, within former Liberty territories CA 689, and CA 691, or within 25 miles of the boundaries of these territories, for two years after July 10, 2014.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of filing of this Report, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.

A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 27th, 2015

15

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Robert W. Berg
8674 Perseus Road
San Diego, California 92126

Fernando Galindo, Clerk

By _____
Deputy Clerk

January 27, 2015